IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ROBERT WATKINS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 5:08-CV-259 (CAR) |
| | : | |
| | : | |
| FARMERS AND MERCHANTS BANK; | : | |
| CAPITAL CITY BANK, as Successor in | : | |
| Interest to Farmers and Merchants Bank; | : | |
| and L.P. KEEN INSURANCE AGENCY, | : | |
| INC., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

*ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT*

This lawsuit arises out of a series of loans Plaintiff Robert Watkins, his family,

and his family's corporate entities secured through Defendant Farmers and Merchants

Bank ("FMB").  Plaintiff claims that FMB deducted funds from Plaintiff's accounts that

are unaccounted for.  Specifically, Plaintiff contends FMB improperly deducted funds

on the pretense that the funds were applied to interest and insurance premiums for

"force-placed" insurance.  Plaintiff alleges FMB, together with Defendant L.P. Keen

Insurance Agency, Inc. ("Keen"), misappropriated those funds as the funds were not

used for the purchase of any "force-placed" insurance.  Plaintiff brings claims against

1

Defendants for violation of the Truth in Lending Act and under Georgia law for Fraud,

Money Had and Received, Breach of Fiduciary Duty, Conversion, and Accounting.

Currently before the Court are Defendants FMB's and Capital City Bank's, as successor

in interest to FMB, (collectively, "the Banks") Motion for Summary Judgment [Doc. 18],

Defendant Keen's Motion for Summary Judgment [Doc. 21], and the respective

responses and replies thereto.[1]  Having read and considered the Motions, the record in

this case, the applicable law, and the arguments of the parties, the Court finds Plaintiff

has raised no genuine issue of material fact on any of his claims and therefore **GRANTS**

Defendants' Motions [Docs. 18 and 21].

## BACKGROUND

Because this case is before the Court on summary judgment, the Court must

view the facts in the light most favorable to the non-moving party – in this case Plaintiff

– and draw all favorable inferences in favor of that party.  Hairston v. Gainesville Sun

Publ'g Co., 9 F.3d 918, 918-19 (11th Cir. 1993).  The determination of the factual

background and the review of the record for this case, however, has been impeded by

the submission of voluminous record material that is not cited by the parties in their

---

[1] Also before the Court are Defendants' Motions for Hearings on the Motions for
Summary Judgment [Docs. 56 and 57].  Because the Court does not find a hearing
necessary to resolve any issues, these Motions are **DENIED**.

briefs, including more than two hundred pages of exhibits to Plaintiff's deposition that

are not labeled, indexed, referenced, or separated in any decipherable or cohesive

manner.  The exhibits consist of copies of checks to various companies and individuals,

various closing statements for multiple companies and individuals, transcripts of

unknown conversations, and loan documents.  The relevance of most of these

documents is unknown to this Court.  "There is no burden upon the district court to

distill every potential argument that could be made based upon the materials before it

on summary judgment."  Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599

(11th Cir. 1999).  It is not the Court's duty to scour the record, articulate and support a

claim, and then evaluate it for merit.

This lawsuit makes the seventh suit since 2004 that members of the Watkins

family have filed against FMB alleging the same types of claims raised here, including

fraud, breach of fiduciary duty, conversion, violation of the Truth in Lending Act,

violation of Georgia's RICO Act, and Accounting.[2]  In each of these prior cases, the

---

[2] The instant case is a companion case to Samantha D. Watkins v. Farmers & Merchants Bank, Capital City Bank, and L.P. Keen Insur. Agency, Superior Court of Bibb County, Civil Action File No. 08-CV-49311; & Matthews, Wilson & Matthews, Inc. v. Farmers and Merchants Bank, Capital City Bank, & L.P. Keen Insur. Agency, Superior Court of Bibb County, Civil Action File No. 08-CV-49310.  The prior lawsuits, in reverse chronological order, are: (1) Geneva L. Watkins and Doge, Inc. v. Farmers & Merchants Bank, Capital City Bank, & L.P. Keen Insur. Agency, State Court of Gwinnett County, Civil Action File No. 06C-10783-4; (2) Geneva L. Watkins v. Farmers & Merchants Bank,

Watkins' family claims have failed.  Plaintiff originally filed this lawsuit in the Superior

Court of Bibb County.  Defendants removed the case to this Court pursuant to the

Court's diversity jurisdiction.

Plaintiff Robert Watkins and his wife Geneva have been obtaining loans from

FMB for over 30 years to finance various business operations.  Some of the operations

were owned by his wife, or his daughter Samantha Watkins, or by corporations owned

by Plaintiff (Doge, Inc.) or his daughter (Matthews, Wilson and Matthews, Inc.).

Plaintiff was the primary family representative with regard to communications and

negotiations with FMB.  In negotiating the various loans, Plaintiff only worked with

FMB's CEO, Wallace Miller.  For most, if not all the loans, Plaintiff would personally

guarantee the debt.

Plaintiff's family and/or family corporations used various properties as collateral

---

et al., United States District Court, Southern District of Georgia, Adversary Proceeding
No. CV304-079, aff'd No. 06-10061 (11th Cir. June 27, 2007) (per curiam); (3) Matthews,
Wilson & Matthews, Inc. & Samantha D. Watkins v. Farmers & Merchants Bank, et al.,
United States District Court, Northern District of Georgia, Civil Action File No. 06-CV-
1561; (4) In re: Matthews, Wilson & Matthews, Inc., United States Bankruptcy Court,
Southern District of Georgia, aff'd, Matthews, Wilson & Matthews, Inc. v. People Bank
of South Carolina, United States District Court, Southern District of Georgia, CV105-82
(Oct. 17, 2006), aff'd, No. 06-16054 (11th Cir. Apr. 19, 2007); (5) Doge, Inc. v. Farmers
and Merchants Bank, et al., Superior Court of Columbia County, Civil Action File No.
2004 CV 0654; and (6) Doge, Inc. v. Farmers & Merchants Bank, et al., Superior Court of
Laurens County, Civil Action File No. 2004-12445, after transfer to Southern District,
Dublin Division, Case no. CV 306-95.

or cross-collateral for the numerous loans and other transactions obtained during the almost thirty years of doing business with FMB.  In each such transaction, the borrowing individual and/or entity was required to maintain insurance on the pledged collateral.  Where the borrower either fails to obtain such insurance and/or allows such insurance to expire, FMB was authorized to "force place" insurance on such pledged collateral to protect its interests as lenders.  Force-placed insurance is taken out by a bank – here, FMB – to cover a borrower's outstanding indebtedness on a piece of property when the borrower has not taken out insurance coverage on his or her own.

"Force-placed" policies are intended to protect the interests of the lender, and it is the lender, not the borrower, who is the named insured on the policy.  FMB maintained a force-placed insurance policy, Policy No. MP7000767/997, with Lloyd's London to provide coverage for assets pledged by individuals such as Plaintiff's family as security for loans when the borrower did not obtain insurance.  FMB's Policy was procured through Proctor Financial, Inc., a third-party administrator acting on behalf of the insurer, Lloyds of London.

FMB's Policy is known as a "reporting form policy," which requires that the bank report to Proctor the specific property it wants covered by the force-placed insurance. FMB's procedure in obtaining force-placed insurance for properties began when FMB's

insurance clerk would receive notices of insurance cancellation on pledged collateral.

Having received such notice, the clerk was supposed to contact the borrower and

advise him or her of the lapse in coverage. If the policy premium was not paid, the

insurance clerk then consulted with the FMB loan officer as to whether FMB would

subject the pledged collateral to the force-placed insurance policy in place for FMB.

After the property was added to the Policy, a certificate would be issued for FMB's file

showing that the property was covered under the Policy. If after the property was

placed under the Policy the customer could prove that he had obtained insurance on the

property, the coverage for that property would be cancelled.

Defendant Keen serviced the Policy and determined the premium amount based

upon loan information from FMB. Keen's role was to forward all premiums to Proctor

to cover the Policy. If the collateral was to be put on force-placed insurance, the FMB

clerk advised Keen as to the loan amount to be covered, the property address, and

when to make coverage effective. FMB would issue cashier's checks to Keen, having

taken the funds from the borrower's accounts. Keen's role was to collect the paid

premium amounts from FMB and forward those premiums to Proctor. The Keen family

owned both FMB and the insurance agency, and the agency's office was inside FMB's

building.

Plaintiff's claims in this case are two-fold: First, Plaintiff claims that FMB, through its against and employee, Wallace Miller, CEO, failed to account for some of Plaintiff's funds.  Second, Plaintiff claims that FMB, in concert with Defendant Keen, used and appropriated Plaintiff's funds on the pretext that they were used to pay premiums on  force-placed insurance which was never purchased.  Plaintiff also contends that FMB, in concert with Keen used and appropriated Plaintiff's funds to purchase force-placed insurance when such insurance was not needed.

**STANDARD OF REVIEW**

Under the familiar standard of Federal Rule of Civil Procedure 56(c), summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  The movant has satisfied its burden of proof if, "after adequate time for discovery," the non-movant has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When the motion is filed by a defendant and addresses the adequacy of plaintiff's causes of action, the defendant's "burden is not to produce evidence negating the existence of material facts; rather, the burden is to 'point

out the absence of evidence supporting the nonmoving party's case.' " <u>Compania de Elaborados de Café v. Cardinal Capital Mgmt., Inc.</u>, 401 F. Supp. 2d 1270, 1274 (S.D. Fla. 2003) (quoting <u>Skotak v. Tenneco Resins, Inc.</u>, 953 F.2d 909, 913 (5th Cir. 1992)); <u>see also</u> <u>Hickson Corp. v. N. Crossarm Co.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004).

Assuming the moving defendant has met its initial burden, the non-moving plaintiff "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986). There must be a *genuine* factual dispute sufficient to permit a *reasonable* jury to return a verdict for the non-movant; and, "[f]or factual issues to be considered genuine, they must have a real basis in the record." <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (quoting <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)). "For instance, mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." <u>Ellis v. England</u>, 432 F.3d 1321, 1326 (11th Cir. 2005). While the Court must view all of the evidence and any inferences arising therefrom in light most favorable to the non-movant, it is nevertheless insufficient for the non-

8

movant "to state what the evidence at trial will demonstrate" without producing actual

"evidence to refute the factual claims contained in the motion for summary judgment."

Schvaneveldt v. MasTec N. Am., Inc., 306 F. Supp.2 d 1177, 1181 (S.D. Fla. 2004) (citing

Hairston, 9 F.3d at 918). Nor is the Court "required to scour the record to determine

whether there exists a genuine issue of material fact to preclude summary judgment. "

Cardinal Capital, 401 F.Supp.2d at 1282 n. 5 (internal quotations and citation omitted).

## DISCUSSION

Plaintiff asserts seven causes of action against the Banks – fraud, money had and

received, conversion, violation of Georgia's RICO act, breach of fiduciary duty, failure

to give a full accounting, and violation of the Truth in Lending Act – and three against

Defendant Keen – fraud, conversion, and violation of Georgia's RICO act.[3]  As

discussed below, Plaintiff's fraud, conversion, and RICO claims against both

Defendants FMB and Keen,[4]  and Plaintiff's money had and received and Truth in

---

[3] Although in its briefs Keen addresses Plaintiff's claim for an accounting, Plaintiff does not assert this claim against Keen.  See Compl. ¶¶ 52-57.  Even if it could be construed that Plaintiff asserts a cause of action for a proper accounting against Keen, this claim would fail.  Plaintiff has failed to establish that Keen has not provided a full and proper accounting.

[4] Although Defendant Keen did not argue in its Motion that Plaintiff's claims against it were barred by the statute of limitations, the Court finds Keen has not waived this defense because it was affirmatively raised in Keen's Answer, see Doc. 4, Eighth Defense.  Moreover, certainly Plaintiff was on notice of the statute of limitations defense

Lending Act claims against Defendant FMB, are barred by their respective statutes of limitations.  Plaintiff's breach of fiduciary duty and accounting claims against FMB also fail.

A.      Statute of Limitations

A federal court in a diversity action must apply the controlling substantive law of the state.  Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).  State statutes of limitations are considered substantive laws and, therefore, must be followed by federal courts in diversity actions. Jinks v. Richland County, S.C., 538 U.S. 456, 465 (2003). State law also generally determines tolling rules.  Wallace v. Kato, 549 U.S. 384, 393-96 (2007).  Thus, in this case, the Court looks to Georgia law in analyzing whether these claims are barred by the statute of limitations.

The statutes of limitations for Plaintiff's fraud, money had and received, and conversion claims are four years.  See O.C.G.A. § 9-3-31 (fraud), O.C.G.A. § 9-3-25 (money had and received), and O.C.G.A § 9-3-32 (conversion).  The statute of limitation period for Plaintiff's RICO claims is five years.  See O.C.G.A. § 16-14-8.  The statute of

_____

and able to argue the merits of the defense as it was raised by Keen's co-defendants. The Court, however, recognizes that Plaintiff has not had an opportunity to address the statute of limitations as specifically related to Defendant Keen.  Thus, should Plaintiff wish to address these claims, Plaintiff should file a Motion for Reconsideration within 28 days of the date of this Order, and the Court will review the arguments *de novo*.

limitations for Plaintiff's Truth in Lending Act claim is one year.  See 15 U.S.C. § 1640(e).

The Court will first analyze the statutes of limitations for Plaintiff's claims based on

Defendants' alleged fraud and then separately analyze Plaintiff's Truth in Lending Act

claim.

        1.        Claims Based on Defendants' Alleged Fraud

Plaintiff's claims for fraud, money had and received, conversion, and violation of

Georgia's RICO statute are based on Plaintiff's allegations that Defendants fraudulently

charged Plaintiff for "force-placed" insurance both when such insurance was not needed

and when Defendants never procured the insurance.   Although Plaintiff contends in his

affidavit that he did not discover Defendants' alleged fraudulent conduct until it was

revealed through discovery in other litigation in September 2004, Plaintiff's prior

deposition testimony undeniably establishes that he first suspected Defendants of

misappropriating his funds before 1998, more than ten years before filing this action

and well outside the applicable statutes of limitations for each claim.

The statute of limitation period for each of these claims either begins to run

when, or may be tolled until, the plaintiff discovers, or should have discovered through

the exercise of reasonable diligence, that he has been injured.  See Shipman v. Horizon

Corp., 245 Ga. 808, 808-09 (1980) (where actual fraud "is the gravamen of the action, the

statute of limitation is tolled until the fraud is discovered or by reasonable diligence should have been discovered."); Macomber v. First Union Nat'l Bank of Ga., 212 Ga. App. 57, 58 (1994) (accrual of an action for money had and received "begins with the discovery of the fraud."); Stewart v. Warner, 257 Ga. App. 322, 323 (2002) (statute of limitations for conversion claim may be tolled until time of plaintiff's discovery of the fraud); Cobb County v. Jones Group P.L.C., 218 Ga. App. 149, 154 (five year statute of limitation for RICO claim begins to run when "the plaintiff discovers, or reasonably should have discovered, that he has been injured and that his injury is part of a pattern.").

Although issues concerning a plaintiff's diligence in discovering fraud usually must be resolved by the trier of fact, this "is not always the case.  A party may fail to exercise due diligence as a matter of law."  McClung Surveying v. Worl, 247 Ga. App. 322, 324 (2000).  It is the plaintiff's burden to show the existence of facts that would toll the statute of limitations.  Edmonds v. Bates, 178 Ga. App. 69, 72 (1986).

The evidence in this case establishes that as a matter of law Plaintiff could have and should have, through the exercise of reasonable diligence, discovered all of Defendants' alleged fraud more than ten years before this action was filed.  Plaintiff's prior testimony establishes that he first suspected Defendants of misappropriating

12

funds before 1998.  In a prior deposition taken on July 30, 2007, Plaintiff was asked:

"When do you contend that you first – when do you contend that you believe Mr.

Miller and Farmers & Merchants Bank first started misappropriating your funds."

Depo. Robert L. Watkins, July 30, 2007, 87:7-10.  Plaintiff responded: "The first time I

saw some action went on in that behavior, in that kind of behavior, was when I sold a

home out in East Dublin called the Old Kellum Road."  Id. at 87:11-14.  Plaintiff

identifies that the sale of the Old Kellum Road property "was prior to 1998."  Id. at 89:5-

12.  Thus, Plaintiff's prior testimony undeniably establishes that he first suspected

Defendants of misappropriating funds before 1998.

Plaintiff's assertions in his affidavit that he did not learn of the misuse of his

funds until after litigation was initiated against the banks in September 2004, is

disingenuous and contradicted by his prior deposition testimony.  In addition to the

above-identified testimony in which Plaintiff testifies that he suspected Defendants'

misappropriation of his family's funds in 1998, Plaintiff clearly testifies that he was

aware of the allegedly fraudulent charges for force-placed insurance as of 2000,

approximately eight years before filing this action.  In his December 11, 2006 deposition

taken for a prior case against FMB, Plaintiff testifies that he suspected Wallace Miller

was fraudulently charging for insurance on his Knob Hill property.  Plaintiff stated that

FMB "paid fraudulent insurance on Knob Hill that I didn't even own in the year of the

12th and 2000. . . .  I'll show you – [FMB] took money and just ripped us off and went

and paid it. . . . [T]he 12th of 2000, [FMB] took $1,045 and paid it to – it had to go to

Knob Hill because . . . I didn't have nothing else on the 12th of 2000 because he had took

everything that Doge had.  So, what he was taking out insurance on beats me, because

Robert or Doge didn't have nothing the 12th, the 9th, 2000."  Depo. Robert L. Watkins,

Dec. 11, 2006, 201:7-9.

Possessing knowledge of fraud in 1998 and 2000, but doing nothing about it for

at least eight years until filing this case, precludes any argument that Plaintiff exercised

reasonable diligence in discovering the alleged fraud.  Thus, the Court finds as a matter

of law that Plaintiff failed to exercise due diligence in discovering the fraud he

suspected Defendants of committing more than eight years ago, and thus these claims

arose well outside any applicable statute of limitation.

2.      Violation of Truth in Lending Act

Likewise, Plaintiff's claim that Defendants failed to accurately disclose the

charges on various Disclosure Statements, thereby violating the Truth in Lending Act

("TILA"), is also barred by the statute of limitations.  In order to bring an action against

a creditor for statutory damages under TILA, the debtor must bring the action "within

one year from the date of the occurrence of the violation[.]" 15 U.S.C. § 1640(e).  "The violation 'occurs' when the transaction is consummated."  In re Smith, 737 F.2d 1549, 1552 (11th Cir. 1984).  "Nondisclosure is not a continuing violation for purposes of the statute of limitations."  Id.

Of the 106 documents Plaintiff attached to his affidavit, the most recent loan document was dated November 19, 2003, and most are dated between 1997 and 2000. (Doc. 29-2, Exh. 29).  Plaintiff filed this action on July 10, 2008, over four years after the most recent loan document.  Thus, it is clear that the action is time-barred.

Although Plaintiff did not make such an argument, a TILA action may be equitably tolled where the defendant has fraudulently concealed the cause of action from the plaintiff.  Ellis v. Gen. Motors Acceptance Corp., 160 F.3d 703, 708 (11th Cir. 1998).  Courts have denied tolling, however, "[w]here a plaintiff relies . . . on the same allegations of fraud which constitute the TILA violation (such a failing to disclose certain finance charge to prove fraudulent concealment" because "if failure to make TILA disclosures also tolled the limitations period for pursuing TILA claims, then the statute of limitations would be rendered meaningless because those non-disclosures are the very essence of the TILA violation in the first place."  Grinke v. Countrywide Home Loans, Inc., 2009 WL 2588746, No. 08-23382-CIV, *2 (S.D. Fla. Aug. 24, 2009).  Thus, a

borrower must assert more than a mere nondisclosure to assert equitable tolling.  See

id., see also In re:Smith, 737 F.2d at 1552 ("Nondisclosure is not a continuing violation

for purposes of the statute of limitations.").

Here, Plaintiff has asserted nothing more than nondisclosure, and therefore his

claims are time-barred.  Plaintiff asserts only that the "Truth-in-Lending Disclosure

Statements prepared by defendants FMB and CCB were inaccurate and reflected

charges to be paid by plaintiff which were not incurred nor due with regard to the

various loans obtained by plaintiff."  (Compl., ¶ 49).  Plaintiff does not assert or argue

any sort of fraudulent concealment that would arguably toll the one year statute of

limitations.

B.      Breach of Fiduciary Duty

Plaintiff's breach of fiduciary duty claim against FMB fails because, as a matter of

law, no fiduciary relationship exists between a bank and its customer.  Plaintiff claims

that FMB, through its agent and representative Wallace E. Miller, acted as a custodian

and fiduciary in handling Plaintiff's funds and, in mishandling Plaintiff's funds,

breached its fiduciary duty to him.  Georgia law, however, is clear that "[t]here is . . .

*particularly* no confidential relationship between lender and borrower or mortgagee and

mortgagor for they are creditor and debtor with clearly opposite interests."  Pardue v.

Bankers First Fed. Savings & Loan Ass'n, 175 Ga. App. 814, 815 (1985) (emphasis in

original).  This is because "[t]he primary duty of a lending bank is to protect the assets

of its members or depositors and not to protect the assets of its borrowers."  Lothridge

v. First Nat. Bank & Co., 217 Ga. App. 711, 715 (1995).

Plaintiff provides no evidence or legal authority to support his contention that

his particular breach of fiduciary duty claim is an exception to the rule due to the

peculiar and unique relationship of trust between plaintiff and the Bank CEO, Wallace

Miller.  On the contrary, Georgia law holds that "[t]he mere fact that one reposes trust

and confidence in another does not create a confidential relationship."  Limoli v. First

Ga. Bank, 147 Ga. App. 755, 758 (1978).  Thus, Plaintiff's claim for breach of fiduciary

duty fails.

C.    Accounting

Plaintiff's claim that the Banks have failed to provide him a full and accurate

accounting is without merit.  Having been in litigation with Plaintiff and his family for

over five years, the Banks have produced approximately 20,000 pages of documents.

Despite having claimed and lost this argument at least three times before filing this

action,[5] Plaintiff continues to blame the lack of evidence supporting his claims on FMB's

---

[5] See G. Watkins v. Farmers & Merchants Bank, et al., CV 304-079, p. 9 (S.D. Ga.
Sept. 1, 2004); Matthews, Wilson & Matthews, Inc. v. Capital City Bank, CV 306-95, p. 10

supposed failure to provide him a complete and full accounting of his monies.  This

Court, like its sister courts, finds, however, that Defendants have fulfilled their

obligation and have provided Plaintiff a full accounting, and Plaintiff has provided no

support to the contrary.  See Matthews, Wilson & Matthews v. Capital City Bank, CV

306-95 (S.D. Ga. Oct. 31, 2007) ("This is now the third time a member of the Watkins

family has bought [a claim for accounting] in federal court.  Defendant has produced all

of its records to Plaintiffs, and Plaintiffs provide no reason to suppose otherwise.").

## CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment [Docs.

18 and 21] are hereby **GRANTED**.  Because the Court does not find a hearing necessary

in this case, Defendants' Motions for Hearings on the Motions for Summary Judgment

[Docs. 56 and 57] are **DENIED**.

**SO ORDERED** this 26th day of March, 2010.

S/ C. Ashley Royal
C. ASHLEY ROYAL
United States District Judge

SSH/apg

---

(S.D. Ga. June 30, 2006); In re: Matthews, Wilson & Matthews, Inc., No. 03-306-95, Doc.
59 (Bankr. S.D. Ga. Sept. 10, 2004).